UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ZHEJIANG LAYO WOOD INDUSTRY CO., LTD., )<br>)<br>)  Ct. No. 12-00013<br>)<br>Plaintiff,  )<br>v.  )<br>)<br>UNITED STATES,  )<br>)<br>Defendant,  )<br>) | |

# COMPLAINT

Plaintiff, Zhejiang Layo Wood Industry Co., Ltd ("Layo Wood"), by and through its counsel, alleges as follows:

## Parties

1. Plaintiff is a privately held company organized under the laws of the People's Republic of China ("China"). Plaintiff manufactured and exported subject "multilayered wood flooring" or "MLWF" during the period of investigation, April 1, 2010 through September 30, 2010, and timely filed pleadings before the administering authority as a mandatory respondent.

2. Defendant is the United States of America acting by and through the U.S. Department of Commerce of Commerce (the "Department").

## Jurisdiction

3. This action is brought pursuant to sections 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i) of

the Tariff Act of 1930, as amended, 19 U.S.C.§§ 1516a(a)(2)(A)(i)(II) and (B)(i) (2010), to contest the Department's final affirmative determination under 19 U.S.C. §1673d, in the antidumping duty investigation of MLWF.  *See* <u>Multilayered Wood Flooring From the People's Republic of China: Final Determination of Sales at Less Than Fair Value</u>, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) ("Final Determination") and accompanying antidumping duty order published as <u>Multilayered Wood Flooring From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order</u>, 76 Fed. Reg. 76,690 (Dep't Commerce Dec. 8, 2011) ("Antidumping Duty Order").  Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

### Standing

4. Plaintiff is a foreign producer and exporter of subject MLWF that participated in the investigation resulting in the contested determination.  Accordingly, plaintiff qualifies as an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

5. In addition, because the Department made a final determination that was not lawful, or, otherwise overstated Layo Wood's antidumping duty margin, Layo Wood has been adversely affected or aggrieved by agency action within the meaning of Section 702 of Title 5 of the United States Code.  Therefore, Plaintiff has standing to bring this action under 28 U.S.C. § 2631(c).

### Timeliness

6. Notice of the antidumping duty order resulting from the contested determination was published in the *Federal Register* on December 8, 2011.  Plaintiffs filed a summons

instituting this action on January 6, 2012, serving notice of the action upon all other participants in the investigation on the same date.  Furthermore, Plaintiff is filing this complaint within thirty days (as defined and/or expanded under Court Rule 6(a)(1)(c), providing that when the last day of a period falls on a Sunday the period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday) after filing the aforementioned summons.  Therefore, Plaintiff has commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 and Rule 6 of the Rules of this Court.

## STATEMENT OF FACTS

7. Commerce initiated the antidumping duty investigation of multilayered wood flooring from the PRC on November 10, 2010.  <u>Initiation of Antidumping Duty Investigation: Multilayered Wood Flooring From the People's Republic of China</u>, 75 Fed. Reg. 70,714 (Dep't Commerce Nov. 18, 2010).  The International Trade Commission  (the "Commission") simultaneously conducted its injury investigation.  *See* <u>Multilayered Wood Flooring from China</u>, 75 Fed. Reg. 66,126 (Int'l Trade Comm'n Oct. 27, 2010).

8. The Department selected three exporters as mandatory respondents in the investigation: Layo Wood, Zhejiang Yuhua Timber Co., Ltd. ("Yuhua"), and the "Samling Group" (a collection of affiliated production and selling companies).

9. Petitioners filed an allegation of targeted dumping by Layo Wood and the other respondents on April 4, 2011.

10. On May 26, 2011, the Department issued a preliminary determination, assigning de minimis rates to Layo Wood and Yuhua.  *See*  <u>Multilayered Wood Flooring From the</u>

People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value, 76 Fed. Reg. 30,656, 30,665-66 (Dep't Commerce May 26, 2011) ("Preliminary Determination").  The Samling Group was initially assigned a margin of 10.88, based on a ministerial error.

11. In its Preliminary Determination, the Department found that, although there was a pattern of targeting under the law and its practice, Layo Wood's preliminary margin would be de minimis whether or not targeted dumping methodologies were applied to its calculation. Id. at 30,659.  Accordingly, the Department declined to apply the targeting methodology to Layo Wood for the Preliminary Determination.  Id.

12. In the Preliminary Determination, the Department relied upon the financial statements of the following Philippine producers of "comparable" merchandise:  Davao Panels Enterprises, Inc., Megaplywood Corporation, and Premium Plywood Manufacturing Corporation, each covering the fiscal year ending December 2009. Id. at 30,665.

13. In the Preliminary Determination, the Department selected a value for Layo Wood's most important core materials, i.e., materials consumed by Layo Wood in the manufacture of plywood cores for the MLWF, based on Philippine import statistics for HTS 4408.90.10 of 173.41 USD/M3 (U.S. dollars per cubic meter) (providing for non-tropical face veneers).[1] Id. at 30,663, 664 and MLWF Surrogate Value Memorandum (May 19, 2011) at 7.

14. On August 1, 2011, the Department filed numerous letters advising all three respondents

---

[1] Layo Wood had reported consumption of four types of such "core" veneer wood raw materials:  (1) eucalyptus chips or sheets; (2) Okoume chips or sheets; (3) Poplar chips or sheets; and (4) birch chips or sheets.  Of these four, the Department thus had capped the value of the eucalyptus, poplar and birch at the

4

that it was rejecting their surrogate value and surrogate value rebuttal submissions because they allegedly contained new untimely information.

15. August 11, 2011, the Department notified Layo Wood that it had rejected certain surrogate value information it had refiled on the administrative record in response to the original rejection letter. All three respondents refiled their information to conform their submissions to the Department's rejection letters. But the submissions had been gutted, in refiled form, of critical information concerning, inter alia, the surrogate financial ratios.

16. On October 18, 2011, the Department published an affirmative final antidumping duty determination in this investigation, finding that Layo Wood made sales at less than fair value of MLWF from the PRC. Final Determination, 75 Fed. Reg. at 64,318. Yuhua Timber, of the three mandatory respondents, was the only one for which a finding of targeting was not made or applied; and the Department assigned Yuhua Timber a de minimis rate and excluded the company from the final determination and related order. *See* 76 Fed. Reg. 64,318, 323; *See also*, 76 Fed. Reg. 76,690, 76,692. Layo Wood was assigned a final determination margin of 3.98 percent. Id. at 64,323. The Samling Group was assigned a rate of 2.63 percent in the Final Determination. Id.

17. As part of the Final Determination, the Department radically changed its selection of surrogate financial ratios; rejecting all of respondents' submitted companies and accepting several new companies proffered by Petitioners. Final Determination at 64,319, & n 12, citing Issues & Decision Memo. at Cmt. 1 and MLWF Surrogate Value Memo (without

---

value of the much more valuable face veneers. With respect to the Okoume, the Department valued it at 244.85 USD/M3, with the apparent reasoning that it was tropical and fell under HTS 4408.39.

page citation in original). As a result, Layo Wood's surrogate financial costs increased as follows: (1) factory overhead increased from 2.57% to 37.18; (2) SG&A increased from 7.15 to 18.84; and (3) profit increased from 1.22 to 2.08.

18. As part of the Final Determination, the Department radically changed its valuation of the core/filler raw materials consumed by Layo Wood from HTS 4408.90.10 to 4408.90.90, a provision that the record reflects does not contain the input in question. As a result, Layo Wood's non-tropical core valuation increased nearly two-fold, from **173.41** USD/M3 to **300.08** USD/M3. Final Determination at 64,318, 319 & n 7, citing Issues & Decision Memo. at Cmt. 16 and MLWF Final Surrogate Value Memo (Oct. 11, 2011) (without page citation in original). Meanwhile, the final valuation of non-tropical face veneers materials remained **173.41** USD/M3.

19. On October 19, 2011, Layo Wood filed an extensive ministerial error allegation. Layo Wood claimed that the Department had, inter alia: (1) inadvertently valued corrugated paper using the PP Strap/Packing Strip surrogate value; (2) calculated an average surrogate value for high density fiber board using an unreasonable and less accurate methodology; (3) failed to account for the cost of obtaining an export letter of credit by deducting it from the cost it sourced from *Doing Business: the Philippines* because Layo Wood did not in fact obtain or use export letters of credit and, even if it had, they were bank charges already captured in the surrogate financial ratios; (4) applied the wrong average thickness for the plywood Layo Wood consumed, instead relying on the thicknesses consumed by others; (5) erred with respect to targeted dumping; and (6) had committed plain error in valuing a core/filler raw material at twice the value of the face

veneers. In the final analysis, the Department only accepted the first of the above-listed errors as "ministerial" in nature. Amended Final Determination and AD Order at 76,691. As such, Layo Wood's antidumping duty margin was reduced from 3.98 to 3.97.

20. The Department conducted a parallel countervailing duty investigation of multilayered wood flooring from the PRC, in which it determined that MLWF was subsidized. *See* Multilayered Wood Flooring From the People's Republic of China: Final Affirmative Countervailing Duty Determination, 76 Fed. Reg. 64,313 (Dep't Commerce Oct. 18, 2011) ("Final CVD Determination") and accompanying countervailing duty order published as Multilayered Wood Flooring From the People's Republic of China: Countervailing Duty Order, 76 Fed. Reg. 76,693 (Dep't Commerce Dec. 8, 2011) ("Countervailing Duty Order"). Layo Wood was assigned a de minimis rate and excluded from the Countervailing Duty Order. Id.

## Count 1

21. Plaintiff hereby incorporates, by reference, paragraphs 1 through 20, above.

22. The Department's decision to apply any targeted dumping methodology was not in accordance with law or regulations because petitioners did not fulfill the requisite for obtaining that relief, by identifying patterns of pricing in excess of reasonable thresholds that were not explained by other factors. Since petitioners' request was itself defective, the Department's application of targeted dumping was not in accordance with law and should be reversed.

<u>**Count 2**</u>

23. Plaintiff hereby incorporates, by reference, paragraphs 1 through 22, above.

24. The Department's decision to apply a newly devised targeted dumping test and methodology to Layo Wood's sales was contrary to law and violated the Administrative Procedures Act because its previous "targeted dumping" regulation was withdrawn by the Department without the required notice and comment. As such, the withdrawn regulation in fact remained in effect and the Department was required to apply it to Layo Wood's databases as written.

<u>**Count 3**</u>

25. Plaintiff hereby incorporates, by reference, paragraphs 1 through 24, above.

26. The Department's targeting dumping analysis unreasonably was based on CONNUMs rather than product codes that had been provided by Layo Wood. As the product codes were more specific, any analysis based thereupon would have been more accurate and would have led to a more accurate antidumping duty margin calculation.

<u>**Count 4**</u>

27. Plaintiff hereby incorporates, by reference, paragraphs 1 through 26, above.

28. Whether or not the Department's "targeted dumping" regulation was properly withdrawn without notice and comment, and whether or not the Department's analysis is based on CONNUMs or product codes, the Department unreasonably failed to recognize that the so-called targeting was so limited (i.e., de minimis) that the finding that there was a "pattern" of targeting is not based on substantial evidence. Alternatively, given the limited so-called

"targeting" and the reasons therefore, the Department, as a matter of reasonableness, should at most have applied the targeting methodology only to those product codes or CONNUMs that were found to be targeted.  As such, the Department's determination to apply a targeted dumping methodology of any kind was not based on substantial evidence or was otherwise unreasonable.

### Count 5

29. Plaintiff hereby incorporates, by reference, paragraphs 1 through 28, above.

30. The Department improperly disregarded Layo Wood's explanations, such as different shipping terms, as to why certain groups (i.e., CONNUMs) of products might be priced differently and hence were not strictly targeted.  Because the Department disregarded this record evidence, its "targeted dumping" dumping finding was not based on substantial evidence.

### Count 6

31. Plaintiff hereby incorporates, by reference, paragraphs 1 through 30, above.

32. The Department's determination to revalue Layo Wood's non-tropical core veneer materials in the Final Determination was not based on substantial evidence concerning the related tariff provisions.  *See* MLWF Issues & Decision Memorandum at Cmt. 16.  The record demonstrated that the provision offered by Petitioners and accepted by the Department for the Final Results contained none of the input in question.  Layo Wood supplied a more specific tariff provision and value that did include the input in question, but this was rejected by the Department.

## Count 7

33. Plaintiff hereby incorporates, by reference, paragraphs 1 through 32, above.

34. The Department's determination to revalue Layo Wood's non-tropical core veneer materials in the Final Determination was not based on substantial evidence in light of the Department's findings concerning other related surrogate values. For instance, the Department valued the core wood components at approximately double the value of the face veneers. If core/filler materials cost twice as much as the thin veneer finish wood that imparts the outer appearance of the installed wood floor, MLWF would not exist at all— Layo Wood would merely sell solid wood flooring. As such, the Department's decision with respect to the core sheet surrogate values was not based upon substantial evidence and indeed was nonsensical on its face.

## Count 8

35. Plaintiff hereby incorporates, by reference, paragraphs 1 through 34, above.

36. The Department's determination to blend two HTS classifications, 4411.11 and 4411.21, for Layo Wood's high density fiber board ("HDF") was not based on substantial evidence. *See* MLWF Issues & Decision Memorandum at Cmt. 20. Tariff subheading 4411.11 was more specific to Layo Wood's input and hence constituted the "best available information" on the record.

## Count 9

37. Plaintiff hereby incorporates, by reference, paragraphs 1 through 36, above.

38. The Department's determination to blend two HTS classifications, 4411.11 and 4411.21,

for Layo Wood's high density fiber board ("HDF"), if sustained by the Court, was not applied in the most reasonable and accurate way. *See* MLWF Issues & Decision Memorandum at Cmt. 20; *see also,* Layo Wood Ministerial Error Letter (Oct. 19, 2011) at 2-3. Just as outlined in that letter, the record evidence suggested that the Department should have: (1) converted the value of HDF in HTS 4411.11 by the stated record density; (2) converted the value of HDF in HTS 4411.21 by the average density; and then (3) simple averaged the two resulting values to obtain the blended value. Layo Wood's proposed methodology used the "best available information" on the record and results in the most accurate margin calculation.

## Count 10

39. Plaintiff hereby incorporates, by reference, paragraphs 1 through 38, above.

40. The Department's final determination valuation for Layo Wood's plywood inputs was not supported by substantial evidence because the Department did not use the correct blend of thicknesses from the selected source for that purpose. Rather, the Department relied on thicknesses more specific to other respondents. As such, the Department relied upon a thickness not purchased by Layo Wood at the thin end of the range and failed to include a thickness at the thick end that would have covered Layo Wood's purchases more accurately. *See* MLWF Issues & Decision Memorandum at Cmt. 13; *see also,* Layo Wood Ministerial Error Letter (Oct. 19, 2011) at 6-7 & Attach. I

## Count 11

41. Plaintiff hereby incorporates, by reference, paragraphs 1 through 39, above.

42. The Department's determinations to reject various of respondents' surrogate value submissions were contrary to its regulations and otherwise unreasonable in the circumstances of the investigation on appeal. The Department rejected respondents' financial statements even though its regulation contemplated that new information could be filed in rebuttal. In this case, the post-preliminary surrogate value filing of petitioners was the first time that they presented an entirely new cost case and respondents were effectively precluded from rebutting it. At a minimum, the information should have been allowed on the record to rebut the inherent representation in petitioners' submission that their proposed financial statements were representative of the plywood industry.

## Count 12

43. Plaintiff hereby incorporates, by reference, paragraphs 1 through 41, above.

44. The Department's determination to rely upon the financial statements of loggers and plywood manufacturers instead of wooden furniture makers was not based upon substantial evidence and otherwise arbitrary and capricious. Layo Wood demonstrated that wooden furniture makers shared more production steps and material inputs with MLWF producers. In contrast, the companies selected by the Department were involved in logging and/or mere plywood manufacturing as well as other activities far afield of the subject merchandise.

## Count 13

45. Plaintiff hereby incorporates, by reference, paragraphs 1 through 43, above.

46. If the Department's determination to rely upon the financial statements of loggers and

plywood manufacturers instead of wooden furniture makers is sustained, the mix of statements finally selected was not based on substantial evidence. The Department accepted the statements of producers not reasonably comparable to Layo Wood and rejected statements of plywood companies that clearly were much more efficient just because they related to the previous fiscal year, thus depriving the final determination of a representative sample of plywood manufacturers.

## Count 14

47. Plaintiff hereby incorporates, by reference, paragraphs 1 through 45, above.

48. The Department's determination that there was no letter of credit expense imbedded in the brokerage and handling fee it calculated was not supported by substantial evidence on the record. *See* MLWF Issues & Decision Memorandum at Cmt. 8. The record established that the hard costs and administrative costs of obtaining such letters were indeed imbedded in the brokerage and handling surrogate value selected by the Department and that Layo Wood did not avail itself of letters of credit. As such, to avoid saddling Layo Wood with a U.S. movement expense it did not incur and to avoid double counting what amount to bank charges in the surrogate financial ratios (SG&A numerator expenses) and in U.S. movement expenses, the Department should have deducted an amount for letters of credit from its brokerage and handling surrogate value calculation.

## Count 15

49. Plaintiff hereby incorporates, by reference, paragraphs 1 through 47, above.

50. The Department's decision to apply the countervailing duty law to the PRC and treat the

PRC as a non-market economy ("NME") in the parallel antidumping duty investigation of MLWF from the PRC is not in accordance with law.  *See* <u>GPX Int'l Tire Com, v. United States</u>, Appeal No. 2011-1107 (Fed. Cir. Dec. 19, 2011) (holding that "government payments cannot be characterized as 'subsidies' in a non-market economy context, and thus that countervailing duty law does not apply to NME countries.")  Simultaneous application of the countervailing duty and antidumping duty laws to an NME results in impermissible double-counting and is contrary to law and the clear legislative intent of these laws.  If such simultaneous application is sustained, then adjustments to the antidumping duty methodology were required.

## **DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, and as challenged herein, Plaintiffs respectfully request that this Court:

(1) order the Department to recalculate Layo Wood's antidumping duty margin without regard to targeted dumping because petitioners did not make the requisite pleadings for the imposition of a targeted dumping analysis; and, if still necessary,

(2) order the Department to reinstate the targeted dumping regulation and apply it to Layo Wood's submitted data in recalculation of its antidumping duty margin in accordance with its regulation; and, if still necessary,

(3) find that the Department 's actions as described in Count 1 through 14 were otherwise unsupported by substantial evidence;

(4) find, if the continued application of countervailing duty measures to Chinese exporters is maintained, that the United States must adjust its antidumping duty

methodologies; and

(5) order the Department to recalculate Layo Wood's antidumping duty rate; and

(6) if Layo Wood's revised antidumping duty rate is de minimis, order the Department to revoke the order with respect to Layo Wood; and

(7) order the Department to publish notice in the <u>Federal Register</u> of the final decision rendered by this Court, after this action has been considered; and

(8) order the Department to issue liquidation instructions to U.S. Customs and Border Protection consistent with this Court's decision; and

(9) provide such other relief as the Court deems appropriate.

                                        Respectfully submitted,

                                        */s/ Gregory S. Menegaz*

                                        Gregory S. Menegaz
                                        (*Signature of Plaintiff's Attorney*)
Date: February 6, 2012                **On behalf of** *Zhejiang LayoWood Industry Co., Ltd,*

# UNITED STATES COURT OF INTERNATIONAL TRADE

***ZHEJIANG LAYO WOOD INDUSTRY CO., LTD.***
***v.***
***UNITED STATES***

Ct. No. 12-00013

## PUBLIC CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 6, 2012, the attached Complaint was served as indicated upon the following:

**BY CERTIFIED MAIL/RETURN RECEPIT REQUESTED**

Jeffrey S. Levin, Esq.
**Mondial Trade Compliance**
7800 Beech Tree Road
Bethesda, MD 20817

Jeffrey S. Neeley, Esq.
**Barnes, Richardson & Colburn**
11 Dupont Circle, NW
Suite 500
Washington, DC 20036

Mark Ludwikowski, Esq.
**Sandler, Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004

Kristin H. Mowry, Esq.
**Mowry & Grimson, PLLC**
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015

Julie C. Mendoza, Esq.
**Troutman Sanders LLP**
401 9th Street, NW
Suite 1000
Washington, DC 20004-2134

Thomas J. Trendl, Esq.
**Steptoe & Johnson LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036-1795

Francis J. Sailer, Esq.
**Grunfeld, Desiderio, Lebowitz, Silverman, Klestadt LLP**
1201 New York Avenue, NW
Suite 650
Washington, DC 20005

Patrick McLain, Esq.
**Wilmer Cutler Pickering Hale and Dorr LLP**
1875 Pennsylvania Avenue NW
Washington, DC 20006

Stephen Wieker, Esq.
**Winston & Strawn LLP**
1700 K Street, NW
Washington, DC 20006-3817

Matthew L. Kanna, Esq.
**Arent Fox LLP**
1050 Connecticut Ave, NW
Washington, DC 20036

Lizbeth R. Levinson, Esq.
**Kutak Rock LLP**
1101 Connecticut Ave, NW
Washington, DC 20036

Craig A. Lewis, Esq.
**Hogan Lovells US LLP**
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

Michael P. House, Esq.
**Perkins Coie LLP**
607 Fourteenth Street, NW
Washington, DC 20005

Kenneth H. Mueller, Esq.
**Law Office of Kenneth H. Mueller**
3E Joanna Cour
East Brunswick, NJ 08816

Yao Chi-Wei
**Timber Industries (Tianjin) Co., Ltd.**
No. 10 Haiqing St.
Export Processing Zone
Teda, Tianjin, PRC

Zhang Ye
**Kang Da Law Firm**
Red Building of Worker's Gymnasium
Chaoyang District, Beijing, 100027

Ren Yongzhong
**DeHeng Law Offices**
12 F, Tower B, Focus Place
No 19 Finance Street
Beijing, PRC 100033

Cynthia Yu
**DueBound Law Offices**
Suite 1906, SK Tower 6A
Jianguomenwai Avenue
Chaoyang District
Beijing, PRC, 100022

Zhang Renpu
**Huamao & Guigu Law Firm**
17/F Building, C Grand Place
5 Huizhong Road
Beijing 100101, PRC

Stephen S. Spraitzar, Esq.
**Law Office of George R. Tuttle**
One Embarcadero Center
Suite 730
San Francisco, CA 94111

David Craven, Esq.
**Riggle & Craven**
8430 West Bryn Mawr Avenue
Suite 525
Chicago, Illinois 60631

William Perry, Esq.
**Dorsey & Whitney LLP**
701 Fifth Avenue
Suite 6100
Seattle, Washington 98104-7043

William H. Barringer, Esq.
**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006


/s/ Kerry Horgan
    Kerry Horgan